# SUMMONS

Attorney(s) LAW OFFICES OF PETER W. TILL
Office Address 105 Morris Avenue, Suite 201
Town, State, Zip Code Springfield, New Jersey 07081

Telephone Number 973-258-0064; 973-258-0478 fax
Attorney(s) for Plaintiff (pwt@till-law.com)

WILFREDO PAGAN,

Plaintiff(s)

vs.

A.P. MOLLER-MAERSK CORP.,
ET AL

Defendant(s)

**Superior Court of New Jersey**

Union County
Law Division
Docket No: UNN-L-003307-24

**CIVIL ACTION SUMMONS**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

Michelle Smith
Clerk of the Superior Court

DATED: 09/11/2024

Name of Defendant to Be Served: INTERNATIONAL LONGSHOREMAN'S LOCAL 1235

Address of Defendant to Be Served: 30 Hennessey Street, Newark, N.J. 07105

**LAW OFFICES OF PETER W. TILL**
Peter W. Till, Esq. NJ Attorney ID No.: 002101974
John V. Salierno, Esq. NJ Attorney ID No.: 014342013
Springfield, New Jersey 07081
(973) 258-0064 telephone
(973) 258-0478 facsimile
pwt@till-law.com
jvs@till-law.com
*Attorneys for Plaintiff*

| | | |
|---|---|---|
| WILFREDO PAGAN, | : | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: UNION COUNTY |
| Plaintiff, | : | DOCKET NO.: |
| -vs- | : | Civil Action |
| | : | |
| -A.P. MOLLER-MAERSK CORP.,<br>-INTERNATIONAL LONGSHOREMAN'S LOCAL 1235,<br>-APM TERMINALS ELIZABETH, LLC,<br>-BRANDON GARCIA,<br>-JOHN WILLIAMS,<br>-MARK PROCACCINI,<br>-FRANK AGOSTA,<br>-SUSAN WINFREE,<br>-JOHN/JANE DOES 1-10, | : | **COMPLAINT AND JURY DEMAND** |
| Defendants. | : | |

The Plaintiff, **WILFREDO PAGAN** (hereinafter **"PAGAN"**), residing at 1734 Forest Hill Road in the Borough of Staten Island, State of New York, by way of Complaint against the Defendants, **A.P. MOLLER-MAERSK CORP.** (hereinafter **"MAERSK"**), **INTERNATIONAL LONGSHOREMEN'S ASSOCIATION** (hereinafter **"LOCAL 1235"**), **APM TERMINALS ELIZABETH, LLC** (hereinafter **"APM"**), **BRANDON GARCIA, JOHN**

**WILLIAMS, MARK PROCACCINI, FRANK AGOSTA,** and **SUSAN WINFREE,** respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction as the claims set forth herein arise out of federal and New Jersey statutory and common law claims.

2. This Court has personal jurisdiction over the Defendants as their residences and principal places of business are located in the State of New Jersey, and the causes of action arose in the State of New Jersey.

3. Venue is properly situated because APM is presently located and doing business in the County of Union, State of New Jersey.

## THE PARTIES

4. At all times relevant to the issues in this case, **APM** is a professional shipping service owned by Maersk and is located at various ports around the world, including Port Elizabeth.

5. At all times relevant to the issues in this case, **PAGAN** reported to work at **APM**'s Port Elizabeth location, with an address of 5080 McLester Street, Elizabeth, New Jersey.

6. At all times relevant to the issues in this case, **LOCAL 1235** is a professional service labor union organized under the laws of the State of New Jersey, whose principal place of business is 30 Hennessey Street, Newark, New Jersey 07105.

7. At all times relevant to the issues in this matter, **BRANDON GARCIA** was and is presently the President of Local 1235.

8. At all times relevant to the issues in this matter, **JOHN WILLIAMS** was and is presently employed by APM as its Director of Labor Relations.

9. At all times during his employment as a foreman with **APM**, **MARK PROCACCINI** was and is presently a member of **LOCAL 1235.**

10. At all times relevant to the issues in this case, **FRANK AGOSTA** was and is presently a member of **LOCAL 1235**.

11. At all times during his membership with **LOCAL 1235**, **FRANK AGOSTA** was employed by/served **LOCAL 1235** in the position of labor adjuster.

12. In his position as a labor adjuster with **LOCAL 1235**, **FRANK AGOSTA's** responsibilities included the administration of grievance matters.

13. At all times relevant to the issues in this case, **SUSAN WINFREE** was and is presently a member of **LOCAL 1235.**

14. At all times during his membership with **LOCAL 1235**, **SUSAN WINFREE** was employed by/served LOCAL 1235 in the position of labor adjuster.

15. In his position as a labor adjuster with **LOCAL 1235**, **SUSAN WINFREE's** responsibilities included the administration of grievance matters.

**PAGAN'S HISTORY WITH THE UNION**

16. **PAGAN** was employed by MAERSK from approximately June 2012 to January 2023.

17. Throughout the entire course of his employment with MAERSK, **PAGAN** worked at APM in Eliabeth, New Jersey.

18. Throughout the entire course of his employment with MAERSK/APM, **PAGAN** was a member of LOCAL 1235.

19. **PAGAN** remains a member of LOCAL 1235 through the present date.

20. Throughout the entire course of his employment with MAERSK/APM, **PAGAN** never received any adverse disciplinary action.

21. Prior to being employed by MAERSK/APM, **PAGAN** was employed by American Stevedore for approximately five (5) years.

22. **PAGAN**'s union while at American Stevedore was Local 1814 of the International Longshoremen's Association.

23. FRANK ACOSTA continues as the President of Local 1814.

24. **PAGAN** was removed from American Stevedore on or about June 2005, allegedly as a result of an ongoing litigation addressing Title VII discrimination in hiring.

25. The American Stevedore litigation was well known amongst LOCAL 1235 members and representatives, including BRANDON GARCIA and FRANK AGOSTA.

## APM'S TERMINATION OF PAGAN

26. On or about October 29, 2022, Iwona Purwin, another employee of **APM**, allegedly informed **MARK PROCACCINI** that **PAGAN** allegedly texted an image to her private, non-work-related cellphone.

27. Iwona Purwin never provided **MARK PROCACCINI** with the image that **PAGAN** allegedly texted to her private, non-work-related cellphone.

28. Iwona Purwin never filed any complaint or grievance setting forth allegations against **PAGAN**.

29. On or about October 29, 2022, **MARK PROCACCINI** reported Iwona Purwin's alleged allegations to **JOHN WILLIAMS**.

30. Shortly after **MARK PROCACCINI** reported Iwona Purwin's alleged allegation to **JOHN WILLIAMS**, **PAGAN** was removed from APM's work schedule.

31. After his removal from **APM**'s work schedule, **PAGAN** spoke with the Human Resources officials at **APM** as part of a purported investigation of Iwona Purwin's alleged allegations.

32. On or about January 11, 2023, **PAGAN** received a "Termination Notice" executed by **JOHN WILLIAMS**.

33. The Termination Notice announced that **PAGAN** engaged in several alleged instances of misconduct.

34. The Termination Notice further announced that **PAGAN** had allegedly admitted to the alleged instances of misconduct.

35. After receiving the Termination Notice, **PAGAN** made inquiry with New York Shipping Association/International Longshoremen's Association Equal Employment Opportunity Officer, Alfred Feliu.

36. In his conversation with Feliu, **PAGAN** denied admitting to the alleged misconduct set forth in the previously published Termination Notice.

37. Feliu responded to **PAGAN** that he (Feliu) would proceed and conduct an independent investigation regarding the subject Termination Notice.

## LOCAL 1235 GAVE INEFFECTIVE ADVICE

38. **PAGAN** then consulted and spoke with **BRANDON GARCIA** and inquired of him whether he (**PAGAN**) should file a grievance with the Union regarding the Termination Notice.

39. **BRANDON GARCIA** directed **PAGAN** not to file a formal grievance, and told **PAGAN** that he, as president of Local 1235 would take action to obtain the reinstatement of **PAGAN's** employment with APM.

40. **BRANDON GARCIA** further instructed **PAGAN** that he should tell the truth about the allegations of misconduct and that "probably nothing would happen."

41. **PAGAN** asked **BRANDON GARCIA** for advice as to whether **PAGAN** should retain an attorney.

42. **BRANDON GARCIA** misled **PAGAN** when he replied that there was no need to retain an attorney.

43. Over the next several months, **PAGAN** made continued and repeated inquiry of **BRANDON GARCIA** if he should file a grievance.

44. **BRANDON GARCIA** continually directed **PAGAN** not to file a grievance, and that he (as president of Local 1235) was working to get **PAGAN**'s job reinstated with APM through back-channel methods.

45. Finally, on or about April 24, 2023, **PAGAN** was directed by **BRANDON GARCIA** to file a grievance with LOCAL 1235 regarding the subject Termination Notice.

46. Accordingly, **PAGAN** filed a grievance with LOCAL 1235 regarding the Termination Notice.

47. On or about May 11, 2023, **PAGAN** again conferred with Albert Feliu whereupon **PAGAN** reported what had occurred.

48. Sometime later, **PAGAN** again asked **BRANDON GARCIA** if **PAGAN** should retain an attorney.

49. **BRANDON GARCIA** again instructed **PAGAN** that it was unnecessary for him to retain an attorney.

**LOCAL 1235 DENIED PAGAN HIS RIGHT TO FUNDAMENTAL PREHEARING DISCLOSURE / DISCOVERY IN ADVANCE AND FOR THE GRIEVANCE HEARING**

50. On or about June 14, 2023, **PAGAN** appeared for a hearing before the Grievance Committee (the "Grievance Hearing").

51. Present at the Grievance Hearing was **PAGAN**, Celso Telle the Union Business Agent presumably representing **PAGAN** at the hearing, **JOHN WILLIAMS** of **APM**, **SUSAN WINFREE** - the Labor Adjuster from the Shipping Association of New York and New Jersey, and James Cocchia, the Labor Adjuster from the ILA.

52. Now in complete reliance on **BRANDON GARCIA's** longstanding and specific direction, **PAGAN** did not retain counsel to represent him at the Grievance Hearing.

53. At the Grievance Hearing, **JOHN WILLIAMS** testified that Iwona Purwin lodged a complaint to a foreman that **PAGAN** had published upon her an image via text message to her cellphone and that she was offended by the image.

54. **JOHN WILLIAMS** further testified he was in possession of the photos **PAGAN** sent to Iwona Purwin, as was corroborated by hearing attendees James Cocchia and Susan Winfree.

55. **PAGAN** was never provided a copy of Purwin's alleged complaint allegedly made to the foreman.

56. No other person, including the named Defendants ever provided **PAGAN** with a copy of the alleged image that Purwin allegedly stated that **PAGAN** had transmitted to her cellphone.

57. **JOHN WILLIAMS** further testified that two (2) other unnamed women made complaints in which they alleged that **PAGAN** had transmitted inappropriate images or similarly made statements to them.

58. **JOHN WILLIAMS** testified under oath that he was in possession of the alleged images that the two (2) other unnamed women alleged to have received from **PAGAN**.

59. The supposed complaints from these two (2) other unnamed women were apparently also based upon the alleged inappropriate photos or alleged statements made by **PAGAN**.

60. No individual has ever provided **PAGAN** with the identity of the two (2) alleged women or copies of the complaints they allegedly filed with the Union or Albert Feliu.

61. No individual has ever provided **PAGAN** with a copy of the findings of Feliu's investigation.

62. No individual has ever provided **PAGAN** with a copy of the alleged photos that the two (2) alleged unnamed women were to have allegedly received from **PAGAN**.

63. **APM** also failed to produce these alleged complaints or provide the requested information.

64. **APM** failed to provide any prehearing disclosure/discovery materials to **PAGAN** in advance of the Grievance Hearing.

65. On or about June 20, 2023, **PAGAN** received a Report from the Grievance Hearing, authored by **SUSAN WINFREE** and James Cocchia (the "Report").

66. On or about July 15, 2023, **PAGAN** again conferred and consulted with **BRANDON GARCIA** seeking reconsideration of the Report decision.

67. LOCAL 1235, by and through **BRANDON GARCIA,** directed **PAGAN** not to file an appeal.

68. Since receiving the Report, **PAGAN** has had to rely on the hiring hall to secure, at best, sporadic employment.

**FIRST COUNT**
**(Breach Of Due Process As Against All Defendants)**

69. Each allegation herein is incorporated by reference as though recited verbatim and at length.

70. The Fourteenth Amendment to the United States Constitution expresses a public policy of stability in Union employment. As a member of LOCAL 1235, **PAGAN** was entitled to due process of law before being suspended and terminated from his employment at APM.

71. APM's termination of **PAGAN** did not comply with due process as required by the United States Constitution and the Defendants' procedures and rules.

72. The Defendants failed to afford **PAGAN** and otherwise misled and discouraged him from seeking the minimum due process requirements guaranteed when Defendants terminated **PAGAN** on January 11, 2023 and thereafter.

73. The Defendants' failure to provide **PAGAN** with copies of all materials relied on by Defendants in determining to terminate **PAGAN**'s employment constitutes a breach of **PAGAN**'s due process rights.

74. As a direct and proximate result of the Defendants' conduct, **PAGAN** has suffered, and will continue to suffer damages, including humiliation and loss of personal and professional reputation.

75. As a direct and proximate result of the Defendants' conduct, **PAGAN** has suffered and will continue to suffer special damages, including lost wages and benefits, loss of future earnings, retirement earning, other employment benefits, out-of-pocket expenses, and other economic losses.

76. As more fully described above, Defendants violated **PAGAN**'s right to due process intentionally, maliciously, and with conscious disregard of **PAGAN**'s rights.

77. By reason of the above described conduct these Defendants are jointly and severally liable to **PAGAN** for the unjust taking of personal property under the Fourteenth Amendment for injuries suffered by **PAGAN**, in that their conduct deprived **PAGAN** of rights, privileges, and immunities given **PAGAN** by the United States Constitution and the New Jersey Constitution.

**WHEREFORE**, **PAGAN** demands judgment against Defendants, jointly and severally, for compensatory damages, consequential damages, punitive damages, general damages, together with attorney's fees, accrued pre-judgment interests, costs of suit, and any other relief as the Court deems proper.

## SECOND COUNT
**(Wrongful Termination As Against Defendants APM Terminals And John Williams)**

78. Each allegation herein is incorporated by reference as though recited verbatim and at length.

79. Defendants withheld from **PAGAN** the opportunity to defend himself at the Grievance Hearing.

80. Defendants refused to provide prehearing/discovery materials to **PAGAN** despite his requests for same.

81. Defendants wrongfully targeted **PAGAN** while failing to take action against others.

82. **PAGAN** was discharged from Defendant **APM** following an improper and unjust review of **PAGAN**'s conduct where the Defendants failed to provide the necessary materials to **PAGAN** for a defense.

**WHEREFORE**, **PAGAN** demands judgment against the Defendants, jointly and severally, for compensatory damages, consequential damages, punitive damages, general damages, together with attorney's fees, accrued pre-judgment interests, costs of suit, and any other relief as the Court deems proper.

**THIRD COUNT**
**(Breach Of Duty Of Fair Representation As To Defendant ILA Local 1235)**

83. Each allegation herein is incorporated by reference as though recited verbatim and at length.

84. Under the National Labor Relations Act, **LOCAL 1235** owed an actual and implied duty of fair representation to **PAGAN** to file a timely grievance, a timely appeal, and did not provide appropriate representation at the hearing or during the entire disciplinary process.

85. A union breaches its duty of fair representation when its conduct toward one of its members is arbitrary or in bad faith.

86. By advising **PAGAN** not to retain counsel to represent him at the Grievance Hearing or file an appeal of the subject Report, and failing to provide Ivona Purwin's alleged complaint to the foreman, the images allegedly sent by **PAGAN** to Purwin's cellphone, and the names of the women who alleged to have received inappropriate images and statements from **PAGAN**, the Defendants engaged in arbitrary conduct, and which such conduct constituted bad faith.

**WHEREFORE, PAGAN** demands judgment against Defendants, jointly and severally, for compensatory damages, consequential damages, punitive damages, general damages, together with attorney's fees, accrued pre-judgment interests, costs of suit, and any other relief as the Court deems proper.

**FOURTH COUNT**
**(Civil Conspiracy As Against All Defendants)**

87. Each allegation herein is incorporated by reference as though recited verbatim and at length.

88. Defendants unlawfully targeted **PAGAN** for his association in previous litigation against American Stevedore, as evidenced by Defendants' failures to take action against other Longshoremen for similar or worse action.

89. Defendants unlawfully prosecuted and otherwise slandered **PAGAN**, despite **PAGAN** having no complaints filed against him.

90. As set forth above, Defendants have committed torts against **PAGAN**, including violation of **PAGAN**'s due process rights and wrongful termination.

91. Defendants agreed to participate in a common scheme against **PAGAN**.

92. Defendants intentionally participated in a furtherance of a plan or purpose to obstruct **PAGAN**'s rights.

93. In furtherance of this plan or purpose, Defendants committed overt and unlawful acts, including acts of deprivation of due process and wrongful termination as alleged herein.

94. As a direct and proximate result of Defendants' conspiracy, the overt acts committed in furtherance of that conspiracy, and the torts committed against this **PAGAN**, he is damaged in business and property, and further damage to this **PAGAN**'s business and property is threatened and imminent.

95. Defendants have engaged in the malicious, willful, and fraudulent commission of wrongful acts, and because of the reprehensible and outrageous nature

of these acts, **PAGAN** is entitled to, and should be awarded, punitive damages against each of the Defendants.

**WHEREFORE**, **PAGAN** demands judgment against Defendants, jointly and severally, for compensatory damages, consequential damages, punitive damages, general damages, together with attorney's fees, accrued pre-judgment interests, costs of suit, and any other relief as the Court deems proper.

**FIFTH COUNT**
**(Emotional Distress As Against All Defendants)**

96. Each allegation herein is incorporated by reference as though recited verbatim and at length.

97. Defendants' termination of **PAGAN**'s employment and unfounded allegations against **PAGAN** proximately caused **PAGAN** severe emotional distress.

98. Defendants acted intentionally, wantonly, and/or in reckless disregard of the high probability **PAGAN** would sustain severe emotional distress as a result of the unfounded allegations against **PAGAN** and the termination of **PAGAN**'s employment.

99. Defendants' termination of **PAGAN** and allegations against **PAGAN** were extreme and constituted outrageous falsehoods which shock the conscience.

**WHEREFORE**, **PAGAN** demands judgment against Defendants, jointly and severally, for compensatory damages, consequential damages, punitive damages, general damages, together with attorney's fees, accrued pre-judgment interests, costs of suit, and any other relief as the Court deems proper.

**LAW OFFICES OF PETER W. TILL**
Attorneys for Plaintiff

By: *_/s/ Peter W. Till_*
Peter W. Till

Dated: September 11, 2024

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Peter W. Till is hereby designated as trial counsel in the within matter as attorney for Plaintiff in this action.

**LAW OFFICES OF PETER W. TILL**
Attorneys for Plaintiff

By: *_/s/ Peter W. Till_*
Peter W. Till

Dated: September 11, 2024

**JURY DEMAND**

Plaintiff **PAGAN** hereby demands a trial by jury on all issues raised herein.

**LAW OFFICES OF PETER W. TILL**
Attorneys for Plaintiff

By: *_/s/ Peter W. Till_*
Peter W. Till

Dated: September 11, 2024

**CERTIFICATION**

Pursuant to Rule 4:5-1, I certify to the best of my knowledge and belief that the dispute about which I am suing is not the subject of any other pending court action or arbitration proceeding, and that no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

I hereby certify that confidential personal identifiers have been redacted from the documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

**LAW OFFICES OF PETER W. TILL**
Attorneys for Plaintiff

By: *\/s/ Peter W. Till*
Peter W. Till

Dated: September 11, 2024

# Civil Case Information Statement

**Case Details: UNION | Civil Part Docket# L-003307-24**

**Case Caption:** PAGAN WILFREDO VS A.P. MOLLER-MAERSK C ORP.
**Case Initiation Date:** 09/11/2024
**Attorney Name:** PETER W TILL
**Firm Name:** PETER W. TILL
**Address:** 105 MORRIS AVENUE SUITE 201 SPRINGFIELD NJ 07081
**Phone:** 9732580064
**Name of Party:** PLAINTIFF : Pagan, Wilfredo
**Name of Defendant's Primary Insurance Company** (if known): None

**Case Type:** EMPLOYMENT (OTHER THAN CEPA OR LAD)
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Wilfredo Pagan?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
**CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION**

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/11/2024
Dated

/s/ PETER W TILL
Signed