<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILFREDO PAGAN,<br><br>Plaintiff,<br><br>v.<br><br>A.P. MOELLER-MAERSK, CORP.,<br>INTERNATIONAL LONGSHOREMEN'S<br>ASSOCIATION, LOCAL 1235, APM<br>TERMINALS ELIZABETH, LLC,<br>BRANDON GARCIA, JOHN WILLIAMS,<br>MARK PROCACCINI, FRANK AGOSTA,<br>SUSAN WINFREE, JOHN/JANE DOES<br>1-10,<br><br>Defendants. | Case No. 2:24-cv-09564 (BRM) (SDA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) filed by Defendants International Longshoremen's Association, Local 1235 ("Local 1235"), Brandon Garcia, and Frank Agosta (collectively, the "Union Defendants") (ECF No. 52), and Defendants A.P. Moeller-Maersk A/S i/p/a A.P Moeller-Maersk, Corp. ("Maersk"), APM Terminals Elizabeth, LLC ("APMT"), John Williams, and Mark Procaccini (collectively, the "Maersk Defendants") (ECF No. 53) on July 8, 2025. Plaintiff Wilfredo Pagan filed his consolidated Opposition on July 28, 2025. (ECF No. 59.) On August 11, 2025, Union Defendants and Maersk Defendants filed their respective Reply Briefs. (ECF No. 66; ECF No. 67.)

Having reviewed and considered the submissions filed in connection with the Motions and having declined to hold oral arguments pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Union Defendants and Maersk

1

Defendants' Motions to Dismiss for failure to state a claim upon which relief can be granted are **GRANTED**. With respect to the Union Defendants, Counts One, Three, Four, and Five of the Complaint are **DISMISSED WITH PREJUDICE**. And with respect to the Maersk Defendants, Count One of the Complaint is **DISMISSED WITH PREJUDICE** and Counts Two, Four, and Five are **DISMISSED WITHOUT PREJUDICE**.

## I.    BACKGROUND

For purposes of these Motions, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Pagan. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

### A.  Factual Background

Pagan is a citizen and domiciliary of New York, New York (ECF No. 1-1 at 2), who was employed by Maersk from June 2012 to January 2023 (*id.* ¶ 16). Throughout the course of his employment with Maersk, Pagan worked for APMT in Elizabeth, New Jersey, and was a member of Local 1235, a professional service labor union. (*Id.* ¶ 17–18.)

On October 29, 2022,[1] APMT employee Iwona Purwin ("Purwin") informed APMT foreman Mark Procaccini ("Procaccini") that Pagan had texted a supposedly "offen[sive]" image to her private cellphone. (*Id.* ¶¶ 26, 53.) Procaccini reported Purwin's allegations to APMT Director of Labor Relations John Williams ("Williams") that same day. (*Id.* ¶ 29.) Shortly

---

[1] Pagan generally uses the phrase "on or about" when describing dates. (*See, e.g.*, ECF no. 1-1 at 8–9.) The Court acknowledges Pagan's approximation as to timing but refers to the dates provided for purposes of readability.

thereafter, Pagan was removed from APMT's work schedule. (*Id.* ¶ 30.) Additionally, an investigation was opened because of Purwin's alleged allegations. (*Id.* ¶ 31.) On January 11, 2023, Pagan received a "Termination Notice" executed by Williams. (*Id.* ¶ 32; ECF No. 53-3 at 20.) The "Termination Notice" noted Pagan had engaged in several instances of misconduct and admitted to doing so. (*Id.* ¶ 33–34.) However, Pagan denied admitting to the alleged misconduct and said this to Alred Feliu ("Feliu"), a New York Shipping Association/International Longshoremen's Association Equal Employment Opportunity Officer. (*Id.* at 35–36.) Feliu informed Pagan he would conduct an independent investigation regarding the "Termination Notice." (*Id.* at 37.) No one ever provided Pagan with a copy of the findings from Feliu's investigation. (*Id.* at 61.)

Sometime later, but before the June 14, 2023 grievance hearing, Pagan consulted with President of Local 1235 Brandon Garcia ("Garcia") who directed Pagan not to file a formal grievance regarding his termination. (*Id.* ¶ 39.) When asked whether Pagan should retain an attorney, Garcia replied in the negative. (*Id.* ¶¶ 41–42.) Additionally, Garcia assured Pagan "nothing would happen" if he told the truth about the allegations of misconduct. (*Id.* ¶ 40.) Over the next several months, Garcia repeatedly informed Pagan he was "working to get P[agan]'s job reinstated with APMT through back-channel methods" and "continually directed" Pagan "not to file a grievance." (*Id.* at 44.) On April 24, 2023, Garcia told Pagan to file a grievance with Local 1235 regarding the "Termination Notice," and Pagan did so. (*Id.* ¶¶ 45–46.) Pagan again asked Garcia if he should retain an attorney, and, again, Garcia informed Pagan doing so was unnecessary. (*Id.* ¶¶ 48–49.)

The grievance hearing took place on June 14, 2023, during which Pagan chose not to retain counsel.[2] (*Id.* ¶¶ 50, 52.) At the hearing, Williams testified Purwin had lodged a complaint, alleging Pagan had sent her an image via text message, which had offended her.[3] (*Id.* ¶ 53.) Williams also testified two other unnamed women had made complaints, alleging Pagan had "transmitted inappropriate images or similarly made statements to them."[4] (*Id.* ¶ 57.)

On June 20, 2023, Pagan received a report from the grievance hearing (*id.* ¶ 65), discharging him from APMT (*id.* ¶ 82). Nearly a month later, Pagan conferred with Garcia about seeking reconsideration of the report decision. (*Id.* ¶ 66.) "Local 1235, by and through Garcia, directed Pagan not to file an appeal." (*Id.* ¶ 67.) Since receiving the report, Pagan has had to rely on the hiring hall to secure employment. (*Id.* ¶ 68.)

**B. Procedural History**

Pagan filed a Complaint on September 11, 2024, in the Superior Court of New Jersey, Law Division, Union County. (ECF No. 1-1.) On October 1, 2024, the Union Defendants removed this action from state court. (ECF No. 1.) The Union Defendants initially moved to dismiss the Complaint. (ECF No. 7.) However, that motion was administratively terminated, and Union Defendants were ordered to file a pre-motion letter requesting a conference pursuant with this

---

[2] APMT failed to provide any prehearing disclosure or discovery materials to Pagan in advance of the grievance hearing. (ECF No. 1-1 ¶ 63.)

[3] Pagan was never provided a copy of Purwin's complaint, or a copy of the image Pagan had allegedly sent to Purwin. (ECF No. 1-1 ¶¶ 55–56.) Additionally, no one disclosed the identity of the two women or provided a copy of their complaints to Pagan. (*Id.* at 60.)

[4] Williams testified he was in possession of the photos Pagan sent to Purwin and the photos Pagan had sent to the two unnamed women. (ECF No. 1-1 ¶¶ 54, 58.)

Court's judicial preferences. (ECF No. 10.)

On October 23, 2024,[5] the Union Defendants filed their pre-motion letter (ECF No. 12), and Pagan filed his response a week later (ECF No. 14). On November 12, 2024, the Maersk Defendants filed their pre-motion letter, requesting permission to file a motion to dismiss Pagan's Complaint; however, Pagan did not file a response to Maersk Defendants' pre-motion letter within the seven-day window prescribed by the Court's judicial preferences. (ECF No. 18.) On June 3, 2025, the Maersk Defendants sought to renew their pre-motion letters (ECF No. 39), as did the Union Defendants the following day (ECF No. 41). Additionally, on June 13, 2025, the Maersk Defendants asked the Court to treat their pre-motion letter as unopposed.[6] (ECF No. 43.) On June 30, 2025, Pagan filed a response to the Maersk Defendants' pre-motion letter. (ECF No. 49.) The next day, having determined a premotion conference would not be beneficial, the Court ordered the parties to proceed with motion practice in accordance with the rules of the Court. (ECF No. 50.)

The Union Defendants and the Maersk Defendants filed their respective Motions to Dismiss on July 8, 2025. (ECF No. 52; ECF No. 53.) Pagan filed his Opposition on July 28, 2025.

---

[5] Around this time, specifically on October 22, 2024, Local 1235 and Garcia filed a motion to disqualify Till as counsel for Pagan. (ECF No. 8.) Local 1235 and Garcia argued that Till should be disqualified from serving as Pagan's counsel because Till previously represented Garcia in connection with an investigation into whether Garcia was barred from pursing election as President of ILA Local 234. (*Id.* at 6–9.) Pagan opposed the motion to disqualify on October 30, 2024. (ECF No. 15.) Local 1235 and Garcia filed a reply on November 11, 2024. (ECF No. 17.) Related to the disqualification motion, Pagan sought leave to file a motion to compel. (ECF No. 25.) On December 17, 2024, the Hon. James B. Clark, U.S.M.J., recused himself from this matter and ordered that all pretrial proceedings would be handled by the Hon. Stacey D. Adams, U.S.M.J. (ECF No. 26.) Ultimately, on May 30, 2025, Judge Adams denied the motion to disqualify Till and denied Pagan's request for leave to file a motion to compel. (ECF Nos. 36, 37.)

[6] That same day, Pagan requested an extension to take action (ECF No. 44); he requested a second extension request on June 25, 2025 (ECF No. 47). The Court granted both extensions. (ECF No. 46; ECF No. 48.)

(ECF No. 59.) On August 11, 2025, the Union Defendants and the Maersk Defendants filed their respective Replies. (ECF No. 67; ECF No. 66.)

## II.   LEGAL STANDARD

### A.  Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . ." *Id.* at 231 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550

U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show the claim is facially plausible. *Iqbal*, 556 U.S. at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes a plaintiff must show the allegations of his or her complaints are plausible. *See id.* at 670.

While the Court generally may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or*

*explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.    DECISION

#### A.    Union Defendants

##### 1.    Due Process (Count One)

Union Defendants argue Pagan's due process claim must be dismissed pursuant to Rule 12(b)(6) because none of the Union Defendants are state actors and Pagan did not allege the Union Defendants were acting under the color of law. (ECF No. 52-1 at 17.) In opposition, Pagan recites various tests courts use to determine if a non-state actor defendant is acting "under color of law" and accuses Union Defendants of "fail[ing] to engage in the requisite scholarly constitutional analysis necessary for the Court to address and rule upon their arguments." (ECF No. 59 at 11–13.) The Union Defendants reply by reiterating Pagan's failure to "allege that any of the Union Defendants acted under . . . color [of federal or state law] in their handling of [Pagan's] grievance." (ECF No. 67 at 13.)

The rights secured by the Due Process Clause of the Fourteenth Amendment are enforced through 42 U.S.C. § 1983 ("Section 1983"). *See West v. Atkins*, 487 U.S. 42, 48 (1988). "To state a claim under § 1983, a plaintiff must . . . show that the alleged deprivation was committed by a person acting under color of state law." *Id.*; *Johnson v. Int'l Bhd. of Teamsters, Loc. 380*, Civ. A. No. 06-3699, 2007 WL 775604, at *3 (E.D. Pa. Mar. 8, 2007), *aff'd sub nom.*, 256 F. App'x 481 (3d Cir. 2007) ("[Section 1983] by its own terms, applies only to those acting under color of state law." (citing 42 U.S.C. § 1983)). However, "if a defendant's conduct satisfies the state-action

requirement of the Fourteenth Amendment, 'that conduct [is] also action under color of state law and will support a suit under § 1983.'" *West*, 487 U.S. at 49 (alteration in original) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982)).

Here, Pagan fails to state a constitutional due process violation claim against the Union Defendants. *Johnson*, 256 F. App'x at 483 ("[A] claim for a violation of civil rights under 42 U.S.C. § 1983 can only be sustained if a defendant deprives a plaintiff of a federal constitutional or statutory right either *as a state actor or while acting under color of state law*." (emphasis added)). The Third Circuit has held that labor unions like Union Defendants "are generally not state actors." *Id.* (internal citation omitted) (affirming the district court's dismissal of the Section 1983 claim against a union and its officers). Furthermore, Pagan's Complaint does not provide enough factual detail to support his color of law theory. *Id.* (citing *Jackson v. Temple Univ. of the Commonwealth Sys. of Higher Ed.*, 721 F.2d 931, 933 (3d Cir.1983)). Specifically, Pagan's Fourteenth Amendment due process rights claim against the Union Defendants, presumably brought under "[Section] 1983, cannot be sustained because, as alleged in the Complaint, the [Union Defendants] are not state actors, nor did they act under color of state law." *Id.*; *see also Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). Accordingly, Count One as to the Union Defendants is **DISMISSED WITH PREJUDICE**.[7]

---

[7] *Bankwell Bank v. Bray Ent., Inc.*, Civ. A. No. 20-49, 2021 WL 211583, at *2 (D.N.J. Jan. 21, 2021) ("Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile.").

##### 2.  Duty of Fair Representation (Count Three), Civil Conspiracy (Count Four), Intentional Infliction of Emotional Distress (Count Five)

###### a.  Preemption

Given Pagan's claim that Local 1235 (and its officers) breached its federal duty of fair representation to Pagan, the Union Defendants argue Pagan's state law claims—the civil conspiracy and intentional infliction of emotional distress ("IIED") claims—are presumptively preempted. (ECF No. 52-1 at 11–13.) In support of this argument, Union Defendants point to decisions from two out-of-circuit courts, which have respectively held the duty of fair representation preempts both Pagan's IIED claim (*id.* at 12 (citing *Curry v. Great Lakes Steel Div.*, No. 83-1075, 1985 WL 13369, at *2 (6th Cir. 1985))), and his civil conspiracy claim (*id.* (citing *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1170 (4th Cir. 1985))). The Union Defendants essentially argue that Pagan's state law claims against the Union Defendants are preempted by the federal duty of fair representation because the entirety of Pagan's Complaint centers around whether Local 1235 properly performed its duties as Pagan's bargaining representative and the losses he sustained from the claimed wrongful discharge.

At the outset, Pagan fails to oppose the Union Defendants' preemption argument as to the civil conspiracy claim. (*See generally* ECF No. 59 at 10–20). However, in opposition to the Union Defendant's preemption argument as to the IIED claim, Pagan points out the Union Defendants have only cited to non-binding authority and notes that IIED claims are "rarely disposed of on a motion to dismiss stage." (*Id.* at 11.)

The National Labor Relations Act imposes a federal duty of fair representation on bargaining representatives. 29 U.S.C. § 159(a); *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990) ("It is now well established that, as the exclusive bargaining representative of the employees, . . . the Union had a statutory duty fairly to represent all of those

10

employees, both in its collective bargaining . . . and in its enforcement of the resulting collective bargaining agreement." (internal citation omitted)). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, and to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Rawson*, 495 U.S. at 372 (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

As the Union Defendants correctly note, "state-law claims are presumptively preempted by the NLRA when they concern conduct that is actually or arguably either protected or prohibited by the NLRA." *Pennsylvania Nurses Ass'n*, 90 F.3d at 801 (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983). However, "[t]he state regulation or cause of action may . . . be sustained if the behavior to be regulated is behavior that is of only peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility." *Id.*

Pagan's civil conspiracy claim "can hardly be called a peripheral concern to federal labor law." *Peterson*, 759 F.2d at 1169. Specifically, his civil conspiracy claim "arise[s] out of the same conduct that he claims violates the duty of fair representation" under the National Labor Relations Act. *Preitz v. Allied Pilots Ass'n*, Civ. A. No. 17-1166, 2018 WL 11381129, at *9 (E.D. Pa. June 25, 2018); (*compare* ECF No. 1-1 at 13, *with id.* at 14–15). The conduct at issue, chiefly Pagan's termination and the handling of the grievance process, "'directly affects the wages and other benefits of workers,' which is the primary concern of federal labor law." *Preitz*, 2018 WL 11381129, at 9 (citing *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 321 (3d Cir. 2004)); (ECF No. 1-1 ¶ 93). Pagan's civil conspiracy claim does not "touch interests 'deeply rooted in local feeling and responsibility.'" *Preitz*, 2018 WL 11381129, at 9 (citing *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 321 (3d Cir. 2004)). "[T]he underlying dispute draws its basic character from [Local 1235's]

11

alleged violation of federal law," *i.e.*, the duty of fair representation. *Peterson*, 759 F.2d at 1170. Moreover, "the state law claims, in both substance and relief, are identical to the federal claim." *Id.* Indeed, "[t]he only losses [Pagan] sustained were caused by his wrongful discharge" *Id.* For these reasons, Pagan's civil conspiracy claim is preempted by the duty of fair representation.

Pagan's IIED claim is also preempted. *Curry*, 1985 WL 13369, at *2. Critically, the allegations specified in connection with Pagan's IIED claim against the Union Defendants "all relate to their duty to represent [Pagan] fairly under the collective bargaining agreement." *Id.*; *Farmer v. United Brotherhood of Carpenters and Joiners, Local 25*, 430 U.S. 290, 305 (1977) ("[I]t is essential that the state tort be either unrelated to employment discrimination or a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself."). Simply put, the factual allegations underlying Pagan's IIED claim are not "products of a particularly abusive manner of discrimination," *Curry*, 1985 WL 13369, at *2, but disputes concerning his employment (ECF No. 15 ¶ 97 ("Defendants' termination of [Pagan's] employment and unfounded allegations against [him] proximately caused [his] severe emotional distress.")).

Because Pagan's civil conspiracy and IIED claims are preempted by the duty of fair representation, Pagan's remaining claims against the Union Defendants are properly directed at the union, not any of its representatives. *Franklin v. Nat'l Mar. Union of Am., (MEBA/NMU)*, Civ. A. No. 91-480, 1991 WL 131182, at *4 (D.N.J. July 16, 1991), *aff'd*, 972 F.2d 1331 (3d Cir. 1992) ("[U]nion members and officials may not be held liable for damages in a duty of fair representation suit."). Accordingly, Counts Three, Four, and Five as to Garcia and Agosta are **DISMISSED**

**WITH PREJUDICE**; additionally, Counts Four and Five as to Local 1235 are **DISMISSED WITH PREJUDICE**.[8]

### b. Duty of Fair Representation

The Union Defendants argue Pagan's duty of fair representation claim is time barred. (ECF No. 52-1 at 13.) In the alternative, they argue Pagan has failed to state a claim for a breach of the duty of fair representation because the facts as alleged merely sound in negligence, which they contend is not enough to support such a claim. (*Id.* at 14–15.)

In opposition, Pagan claims the six-month statute of limitations period is inapplicable to a duty of fair representation claim because he did not include a "corresponding claim against [his] employer for violating the collective bargaining agreement." (ECF No. 59 at 15–16 (citing *Bullock v. Dressel*, 435 F.3d 294, 300 (3d Cir. 2006)).) Moreover, Pagan notes the Court "could not dismiss the Complaint pre-answer without full consideration of the tolling doctrines." Pagan suggests because Garcia "covered up his *ultra vires* behavior and misled [Pagan,] the Union Defendants' affirmative statute of limitations defense is not apparent on the face of the Complaint, and the Court . . . may not dismiss it on that basis." (*Id.* at 19.)

The Union Defendants contend *Bullock* does not apply here because Pagan's "allegations involve a grievance" under the collective bargaining agreement. (ECF No. 67 at 8.) According to the Union Defendants, Pagan has "challenged his union's handling of his contractual grievance" under the collective bargaining agreement, which is "subject to the six-month limitations period" (*id.* at 9 (citing ECF No. 1-1 ¶¶ 50–52, 55–56)), and challenged "his employer's justification for his termination [by] fil[ing] suit against them as well" (*id.* (citing ECF No. 1-1 ¶¶ 27–31)). The Union Defendants essentially argue Pagan has brought a hybrid action subject to the six-month

---

[8] *Bankwell Bank*, 2021 WL 211583, at *2.

statute of limitations because his arguments challenge the Union Defendant's actions with respect to Pagan's contractual grievance and are not entirely internal to the union. (*Id.* (citing ECF No. 1-1 ¶¶ 30–31, 39, 50–55, 66).) Additionally, the Union Defendants reiterate that Pagan's Complaint undercuts his tolling argument because the latest date alleged therein is July 15, 2023, meaning, contrary to Pagan's contention otherwise, the Union Defendants' statute of limitations defense is plainly apparent on the face of the Complaint. (*Id.* at 10–11.)

Section 10(b) of the National Labor Relations Act provides "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge." 29 U.S.C. § 160(b); *see also Wiggins v. String*, 428 F. App'x 117, 118 (3d Cir. 2011) ("[A]ny claim [plaintiff] intended to allege in the form of a breach of the duty of fair representation under the National Labor Relations Act is barred by the applicable six-month statute of limitations." (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 170–71 (1983))).

Pagan's reliance on *Bullock*, a case involving disputes entirely internal to the union, is misplaced. 435 F.3d at 301. Here, Pagan's duty of fair representation claim is inextricably linked to his claim against his employer, APMT, because he is not only challenging his union's handling of his contractual grievance under the collective bargaining agreement's grievance procedure (ECF No. 1-1 ¶¶ 50–52, 55–56), but also challenging APMT's justification for his termination (*id.* ¶¶ 27–31); *see Crusco v. Loc. 804 Int'l All. of Theatrical Stage Emps.*, Civ. No. 11-6893, 2012 WL 4506298, at *5 (D.N.J. Sept. 28, 2012). In *Crusco*, the plaintiff "allege[d] breaches resulting from [the union's] failure to address [the employer's] failure to hire or recall [the] [p]laintiff." 2012 WL 4506298, at *5. The Court concluded the six-month statute of limitations applied because his allegations involved his employer and required the consultation of the collective bargaining

agreement. *Id.* The allegations underlying Pagan's duty of fair representation claim are no different. (ECF No. 1-1 ¶¶ 27–31, 50–52, 55–56.)

Moreover, Pagan's argument that the six-month statute of limitations does not apply because he "has not alleged any violation of the collective bargaining agreement but instead a [state-law] wrongful termination claim" is unpersuasive. *Crusco*, 2012 WL 4506298, at *5 ("Plaintiff's decision not to . . . refer to his collective bargaining agreement in the complaint does not alter the Court's conclusion that a six-month statute of limitations applies."). Pagan's duty of fair representation claim is premised on Local 1235's failure to win his grievance, which could only be at issue if APMT's termination of Pagan violated the collective bargaining agreement. Additionally, Pagan's tolling argument is misguided. According to Pagan, dismissal on statute of limitations grounds would only be appropriate "when the statute of limitations defense is apparent on the face of the complaint." (ECF No. 59 at 17 (citing *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 526 (D.N.J. 2017)).) However, the Court finds Union Defendants' statute of limitations defense is apparent on the face of Pagan's Complaint. (*See* ECF No. 1-1 ¶¶ 66–67, 86.) The Complaint includes no facts to suggest the outcome of the grievance hearing would or could be altered after July 15, 2023, the latest date alleged therein. *Cf. Childs v. Penn. Fed'n Bhd. of Maint. Way Emps.*, 831 F.2d 429, 435–36 (3d Cir. 1987) (holding the statute of limitations did not accrue while the "union continued to represent [the plaintiff], and proffered rays of hope" concerning the possibility that the outcome could be altered). On July 15, 2023, Pagan conferred and consulted with "Garcia seeking reconsideration of the [grievance report] decision" and was directed "not to file an appeal." (ECF No. 1-1 ¶¶ 66–67.) In other words, by July 15, 2023, Pagan had learned any union action or involvement would be futile. *Childs*, 831 F.2d at 435–36.

15

As such, the six-month statute of limitation applies to Pagan's duty of fair representation claim, which began to run on July 15, 2023, and Plaintiff failed to bring such a claim until after his January 2024 deadline; accordingly, Count Three as to Local 1235 is **DISMISSED WITH PREJUDICE**.[9]

### B. Maersk Defendants

#### 1. Due Process (Count One)

The Maersk Defendants are not state actors, and Pagan has failed to allege facts to support a "color of law" theory against them. *See supra* Section III.A.1. Accordingly, Count One as to the Maersk Defendants is **DISMSSED WITH PREJUDICE**.[10]

#### 2. Wrongful Termination (Count Two)

As to the wrongful termination claim, the Maersk Defendants argue Pagan has failed to state a claim upon which relief can be granted because he has not identified a clear mandate of public policy that would be transgressed by his discharge. (ECF No. 53-1 at 15.) However, Pagan contends he has identified such a mandate. (ECF No. 59 at 19–20.) According to Pagan, the policies violated by his discharge include a right to privacy and a right against disability discrimination. *Id.* In reply, the Maersk Defendants first points out Pagan's invasion of privacy argument is supported by a fact absent from the face of his Complaint. (ECF No. 66 at 10.) Additionally, the Maersk Defendants suggest Pagan's invasion of privacy theory is wrong as a matter of law because courts have held there is no reasonable expectation of privacy in the content

---

[9] *Bankwell Bank*, 2021 WL 211583, at *2.

[10] The Court finds amendment to Pagan's due process claim against the Maersk Defendants would be futile for the same reasons the Court has found amendment to his due process claim against the Union Defendants would be futile. *See supra* Section III.A.1; *see also Bankwell Bank*, 2021 WL 211583, at *2.

sent to a third party. (*Id.* (citing *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979); *United States v. Bereznak*, 860 F. App'x 805, 808 (3d Cir. 2021)).)

Under New Jersey law, an employee must identify an expression that equates with a clear mandate of public policy and must show they were discharged in violation of that public policy. *Powell v. Advancing Opportunities*, Civ. A. No. 22-00525, 2022 WL 16961387, at *3 (D.N.J. Nov. 16, 2022) (citing *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 508–09 (N.J. 1980); *Pietrylo v. Hillstone Rest. Grp.*, Civ. Case No. 06-05754, 2008 WL 6085437, at *5 (D.N.J. July 24, 2008)). "[T]he existence of a clear mandate of public policy is an issue of law." *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1012 (N.J. 1998).

Pagan's failure to identify the public policy allegedly violated by his termination from employment is fatal to his common law wrongful discharge claim.[11] (ECF No. 1-1 at 12); *Rodriguez v. Springhill Suites by Marriott*, Civ. A. No. 13-6841, 2014 WL 575529, at *2 (D.N.J. Feb. 10, 2014). Here, Pagan merely makes the following complaints: the Maersk Defendants (1) "withheld from [him] the opportunity to defend himself at the [g]rievance [h]earing,"[12] (2) "refused to provide prehearing/discovery materials . . . despite his requests for same," and (3)

---

[11] The Court will not consider factual allegations that do not appear in Pagan's Complaint. *Save Long Beach Island v. U.S. Dep't of Com.*, 721 F. Supp 3d 317, 335 (D.N.J. 2024) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). As such, the factual allegations included only in Pagan's opposition to the Maersk Defendants' Motion to support his invasion of privacy and disability discrimination public policy arguments will not be considered for purposes of the Maersk Defendants' Motion to Dimiss. *Id.*

[12] It is unclear from the Complaint how the Maersk Defendants withheld from Pagan the opportunity to defend himself at the grievance hearing as he does not allege it was the Maersk Defendants but rather the President of the Union who advised him that retaining an attorney for the grievance hearing would be "unnecessary." (ECF No. 1-1 ¶¶ 48–49.)

"wrongfully targeted [him] while failing to take action against others."[13] (ECF No. 1-1 ¶¶ 79–81.) But Pagan fails to point to any legislation, administrative decisions, rules, or regulations, or judicial decisions that would be violated based on these allegations. (ECF No. 1-1 ¶¶ 79–81); *Pierce*, 417 A.2d at 512 ("The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions."). Indeed, "even based on a liberal reading of the . . . Complaint, [Pagan] does not allege any public policy—let alone one which is clearly mandated—that [the Maersk Defendants] purportedly violated." *Powell*, 2022 WL 16961387, at *4. Accordingly, Count Two as to APMT and Williams is **DISMISSED WITHOUT PREJUDICE**.

### 3. Civil Conspiracy (Count Four)

The Maersk Defendants argue Pagan's claim for civil conspiracy, which is based on his allegations that the Union Defendants and the Maersk Defendants "unlawfully targeted [him] for his association in pervious litigation against American Stevedore," fails to state a claim. (ECF No. 53-1 at 17–18.) Specifically, the Maersk Defendants argue Pagan's civil conspiracy fails to state a claim because Pagan has not established an underlying wrong. (*Id.*) They also argue Pagan's failure to "plead facts sufficient to show that the Maersk Defendants were even aware of his prior litigation against American Stevedore . . . or that they entered in any king of 'agreement' or 'scheme' to terminate his employment because of the same" is fatal for purposes of this Motion to Dismiss.[14] (*Id.* at 18–19.)

---

[13] Pagan also alleges that he was discharged from "APM[T] following an improper and unjust review of [his] conduct where the Defendants failed to provide the necessary materials to [him] for a defense." (ECF No. 1-1 ¶ 82.) However, the Court construes this allegation as encompassed within the preceding allegations. (*Id.* ¶¶ 79–81.)

[14] Pagan has failed to respond to any of the Maersk Defendants' arguments for dismissal of his civil conspiracy claim. (*See* ECF No. 59.) In reply, the Maersk Defendants ask the Court to treat the

Under New Jersey law, to state a civil-conspiracy claim, a plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." *John Wiley & Sons, Inc. v. Rivadeneyra*, 179 F. Supp. 3d 407, 411–12 (D.N.J. 2016) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005)). At the pleadings stage, a plaintiff need only allege "some facts which could, if proven, permit a reasonable inference of a conspiracy to be drawn." *Wiatt v. Winston & Strawn*, 838 F. Supp. 2d 296, 317 (D.N.J. 2012) (quoting *Durham v. City & Cnty. of Erie*, 171 F. App'x 412, 415 (3d Cir. 2006)).

Pagan's civil conspiracy claim cannot survive the Maersk Defendants' Motion to Dismiss. *CrossCountry Mortg., Inc. v. Am. Neighborhood Mortg. Acceptance Co.*, Civ. A. No. 22-1119, 2023 WL 2158930, at *8 (D.N.J. Feb. 22, 2023) (dismissing a civil conspiracy claim "based entirely on conclusory statements"). According to Pagan, the Union Defendants and the Maersk Defendants "agreed to participate in a common scheme against" him and "intentionally participated in a furtherance of a plan or purpose to obstruct [his] rights." (ECF No. 1-1 at 14.) These are quintessential, "[t]hreadbare recitals of the elements" of a civil conspiracy cause of action, which are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Accordingly, Pagan's civil conspiracy claim against the Maersk Defendants is **DISMISSED WITHOUT PREJUDICE**. As such, the Court need not address the Maersk Defendants' alternative arguments.

---

Maersk Defendant's arguments for dismissal of the civil conspiracy claim as unopposed. (ECF No. 66 at 12.)

#### 4. Intentional Infliction of Emotional Distress (Count Five)

The Maersk Defendants argue Pagan's IIED claim should be dismissed because his "allegations of emotional distress do not rise to the level required to sustain a claim for IIED." (ECF No. 53-1 at 19–21.) In opposition, Pagan notes the Maersk Defendants "cite absolutely no legal authority binding upon this Court that could possibly serve as a basis to dismiss [his] claims for emotional distress" before discovery has been taken. (ECF No. 59 at 11.) However, the Maersk Defendants disagree and claim that they cited to both controlling and persuasive case law. (ECF No. 66 at 13 (citing ECF No. 53-1 at 19–21).) Additionally, in reply, the Maersk Defendants also argue the Court should reject Pagan's request to engage in discovery to the extent he has asked for it. (*Id.* at 13–14.)

> To state an IIED under New Jersey law, plaintiffs must show:
>
>> (1) [the] [d]efendant acted intentionally or recklessly; (2) the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) [the] [d]efendant's conduct is the proximate cause of Plaintiff's emotional distress; and (4) the distress was so severe that no reasonable person could be expected to endure it.

*Angle v. United States*, Civ. A. No. 12-2495, 2012 WL 6708165, at *4 (D.N.J. Dec. 21, 2012) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863–64 (1998)).

Here, Pagan's IIED claim is based on his wrongful termination, but allegations of wrongful termination are not enough to make out an IIED claim. *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) ("[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."). "In the context of a dismissal, . . . while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot

20

provide a basis for recovery for intentional infliction of emotional distress." *Id.* (internal citation and quotation marks omitted); *see also Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 297 (N.J. Super. Ct. App. Div. 2001) (citing *Cox*, 861 F.2d at 395). Pagan's IIED claim fails to include facts that sound in the sort of outrageousness needed to support an IIED. (ECF No. 1-1 ¶¶ 97–98.) Moreover, the facts alleged are merely conclusory. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Accordingly, Count Five against the Maersk Defendants are **DISMISSED WITHOUT PREJUDICE**.

### IV.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, the Union Defendants and the Maersk Defendants' Motions to Dismiss (ECF Nos. 52; ECF No. 53) are **GRANTED** for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). As to the Union Defendants, Counts One, Three, Four, and Five of the Complaint are **DISMISSED WITH PREJUDICE**. As to the Maersk Defendants, Count One of the Complaint is **DISMISSED WITH PREJUDICE** and Counts Two, Four, and Five are **DISMISSED WITHOUT PREJUDICE**. An appropriate order follows.


Date: January 20, 2026                              */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**